UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
KAYLA B. ZUCKER, an individual, on
Behalf of herself and all others
Similarly situated,

                    Plaintiff,

        -against-
                                          MEMORANDUM & ORDER
PORTECK GLOBAL SERVICES, INC. a/k/a        13-CV-2674(JS)(AKT)
PORTECK GLOBAL SERVICE, INC. a/k/a
ALL PURPOSE SERVICES INC. d/b/a
PORTECK GLOBAL SERVICES; JOHN AND
JANE DOES NUMBERS 1 THROUGH 50
BEING FICTITIOUS NAMES OF UNIDENTIFIED
PERSONS WHO CONTROL THE POLICIES AND
PRACTICES INVOKED BY PORTECK GLOBAL
SERVICES, INC. a/k/a PORTECK GLOBAL
SERVICE, INC. a/k/a ALL PURPOSE SERVICES
INC. d/b/a PORTECK GLOBAL SERVICES;
and ARVIND WALIA,

                    Defendants.
---------------------------------------X
APPEARANCES
For Plaintiff:                    Robert L. Arleo, Esq.
                                  380 Lexington Ave., 17th Fl.
                                  New York, NY 10168

For Defendants
and Proposed Defendants:
Porteck Corporation
and Melodie Kraljev:              Michael A. Markowitz, Esq.
                                  1553 Broadway
                                  Hewlett, NY 11557

For Proposed Defendants
Mark E. Gelfand and
Steven Medina:                    Barry Jacobs, Esq.
                                  Abrams, Gorelick, Friedman
                                    & Jacobs, P.C.
                                  One Battery Park Plaza
                                  New York, NY 10004

SEYBERT, District Judge:

Two motions are presently pending before the Court: (1) plaintiff Kayla Zucker's ("Plaintiff") motion to amend the Amended Complaint (Docket Entry 71) (the "Motion to Amend"), and (2) Plaintiff's motion for permission to add additional class representative (the "Motion to Add Class Representative") (Docket Entry 75). For the following reasons, Plaintiff's Motion to Amend is GRANTED IN PART and DENIED IN PART and Plaintiff's Motion to Add Class Representative is DENIED.

BACKGROUND[1]

On May 2, 2013, Plaintiff commenced this action, individually and on behalf of others similarly situated, against Mark E. Gelfand ("Gelfand"), Doshi Diagnostic Imaging Services, P.C. ("Doshi"), and Signet Diagnostic Imaging N. Florida ("SDINF"), asserting claims pursuant to the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA"). The Complaint alleges that SDINF, a Florida health care business entity, is a subsidiary of Doshi, a New York corporation that provides medical radiology services. (Compl. ¶¶ 14-17.) Gelfand, an attorney admitted to practice in New York State, was Executive Vice President and General Counsel to SDINF. (Comp. ¶¶ 11, 31). The Complaint alleges that a letter

---

[1] The facts are taken from the Complaint and are presumed to be true for the purposes of this Memorandum and Order.

sent out on Gelfand's letterhead in an attempt to collect debts allegedly owed to SDINF (the "Gelfand Letter") constituted an attempt to "falsely deceive consumers and other persons into believing that an attorney at law was actively participating in attempts to collect alleged debts when, in fact, no such attorney participation occurred . . ." in violation of the FDCPA and FCCPA. (Compl. ¶¶ 30, 47.)  Plaintiff received a copy of the Gelfand Letter dated February 4, 2013 in connection with her alleged twenty dollar ($20.00) debt owed to SDINF for medical services.  (Compl. ¶¶ 43, 46.)

I.  The Amended Complaint

By Stipulation dated December 19, 2013, Plaintiff and defendants Gelfand, SDINF, and Doshi (collectively, the "Original Defendants") stipulated to the filing of Plaintiff's Amended Complaint.  (Docket Entry 40.)  The Amended Complaint asserts claims against Porteck Global Services, Inc. a/k/a Porteck Global Service, Inc. a/k/a All Purpose Service, Inc. d/b/a Porteck Global Services ("PGS"), Arvind Walia ("Walia"), founder and Chief Operating Officer of PGS, and John and Jane Does #1-50, pursuant to the FDCPA only.  (Am. Compl., Docket Entry 41, ¶¶ 9-14.)  The Amended Complaint alleges that PGS performed billing services for Diagnostic Imaging Group, LLC ("DIG") and that PGS sent out the Gelfand Letter to Plaintiff in connection with monies allegedly owed to SDINF for medical services.  (Am. Compl. ¶¶ 17-23.)  The

Original Defendants were terminated as parties to this action by Electronic Order dated June 27, 2014.

II.  The Class Certification Motion

On February 20, 2014, Plaintiff filed a motion to certify class (the "Certification Motion").  (Docket Entry 49.)  On June 18, 2014, Michael A. Markowitz, Esq., counsel for PGS and Walia, filed a letter request to stay the Certification Motion pending the completion of discovery; this correspondence also alleged that Plaintiff's deposition revealed a conflict of interest in her representation of the purported class.  (Docket Entry 59.) Specifically, Plaintiff's father owns International Recovery Associates, Inc. ("IRA"), a medical billing and debt collection company that is an alleged competitor of PGS.

The parties appeared for a motion conference on June 27, 2014, at which time this Court reserved decision on the Certification Motion and directed Plaintiff's counsel to find a suitable substitute class representative within sixty days, at which time Plaintiff's counsel would be able to re-file the Certification Motion.  (Minute Order, Docket Entry 66.) Plaintiff's request for an extension of time until September 2, 2014 to locate a class representative was granted by Electronic Order dated August 20, 2014.  (Docket Entry 70.)

III. <u>The Scheduling Order</u>

On May 20, 2014, Plaintiff's counsel filed a letter motion requesting an extension of time to complete discovery. (Docket Entry 58.) An Electronic Order was entered on May 21, 2014 by Magistrate Judge A. Kathleen Tomlinson. This Revised Final Scheduling Order provided, <u>inter alia</u>, that September 9, 2014 would be the deadline for the completion of all discovery.

IV. <u>Plaintiff's Motion to Amend and Motion to Add Class Representative</u>

On September 2, 2014, Plaintiff filed a Motion to Amend and annexed her Proposed Second Amended Verified Complaint ("Second Amended Complaint"). (Docket Entry 71.) The Second Amended Complaint substitutes Maureen M. Maloney as plaintiff, on behalf of herself and those similarly situated, and brings claims against Gelfand, Steven Medina ("Medina"), Porteck Corporation ("PC"), Arvind Walia ("Walia"), [2] and Melodie Kraljev ("Kraljev") pursuant to the FDCPA (specifically, 15 U.S.C. §§ 1692e and 1692j(a)), FCCPA, and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). (Second Am. Compl., Docket Entry 71-2, ¶¶ 1-2, 60.) Walia is the only defendant to appear in the caption of both the Amended Complaint and the Second Amended Complaint. (<u>See</u>

---

[2] As set forth <u>infra</u>, Walia alleges that he is a shareholder of PGS and the sole owner of PC. (Markowitz Decl., Docket Entry 72-2, ¶¶ 6, 10.)

Am. Compl., Second Am. Compl.)  Plaintiff's counsel avers that Ms.
Maloney commenced a lawsuit in Florida Circuit Court against
Gelfand and SDINF[3] asserting claims pursuant to the FCCPA with
respect to her receipt of the Gelfand Letter.  (Pl.'s Br., Docket
Entry 71-1, at 2.)  Plaintiff's counsel has represented that Ms.
Maloney is prepared to dismiss her Florida State Court action and
proceed as class representative in the case at bar.  (Pl.'s Br. at
2.)

        The Second Amended Complaint asserts that Walia is the
founder and Chief Operating Officer of PC, a New York corporation
that provides collection services to healthcare providers.
(Second Am. Compl. ¶¶ 18-19, 21.)  The Second Amended Complaint
also claims that the Gelfand Letter was drafted by Medina,
circulated to a group of individuals that included Gelfand, Walia,
and Kraljev (the Operations Manager of PC), and sent to Maloney by
PC in connection with her alleged debt owed to SDINF (Second Am.
Compl. ¶¶ 29-32, 42-45).  Plaintiff attempts to further support
the deceptive debt collection scheme by alleging that the telephone
number set forth in the Gelfand Letter was routed to a call center

---

[3] While Plaintiff alleges that Ms. Maloney sued "Signet Diagnostic
Imaging Services," Exhibit "2" to the Motion to Amend contains a
letter purportedly from Gelfand on behalf of "Signet Diagnostic
Imaging Services (North Florida), LLC."  (Pl.'s Br. at Ex. 2.)
The Court assumes that Plaintiff is referring to SDINF when
discussing the defendants in Ms. Maloney's Florida lawsuit.

in India that is purportedly owned by PC.  (Second Am. Compl. ¶ 41.)

On September 17, 2014, Plaintiff filed the Motion to Add Class Representative.  (Docket Entry 75.)  Plaintiff's counsel, Robert Arleo, Esq., alleges that after filing the Motion to Amend, he spoke with Doris Utter, a Florida resident whose name appeared on a list produced during discovery by the Original Defendants which contains the names and addresses of individuals that received the Gelfand Letter.  (Pl.'s Class Rep. Br., Docket Entry 75-1, at 3).  Mr. Arleo avers that Ms. Utter has expressed an interest in being added as a class representative in this action and he requests permission to make such addition.  (Pl.'s Class Rep. Br. at 3-4.)  The Motion fails to annex the letter purportedly received by Ms. Utter.

A.   The Porteck Defendants

Defendants PGS and Walia, along with proposed defendants PC and Kraljev (collectively, the "Porteck Defendants"), filed opposition to the Motion to Amend and a cross motion for summary judgment.  (Docket Entry 72.)  The Porteck Defendants' motion for summary judgment was denied without prejudice by Electronic Order dated September 15, 2014 based on their failure to comply with this Court's individual motion practice rules.  In opposition to the Motion to Amend, the Porteck Defendants argue that: (1) any claim against Kraljev would be futile in light of the absence of

facts establishing that she "personally engage[d] with Zucker, Maloney, or any purported debtor . . . ." (Markowitz Decl., at ¶¶ 38-40); (2) Plaintiff's claim against PC is futile, particularly in light of the fact that the Gelfand Letter was mailed by DIG,[4] not PC (¶¶ 45-46); and (3) the Porteck Defendants are not liable under the FCCPA or FDUTFA (¶¶ 50; 53).[5]

B.  Gelfand and Medina

Dismissed party Gelfand and non-party Medina filed opposition to the Motion to Amend. (Jacobs' Br., Docket Entry 77.)  Gelfand and Medina allege that leave to amend should be denied based on the futility of the proposed Second Amended Complaint. (Jacobs' Br. at 4.)  These putative defendants assert that they are exempt from the FDCPA as employees of the subject creditor (SDINF)[6] and argue that the Second Amended Complaint fails to set forth sufficient allegations of personal involvement to

---

[4] Porteck Defendants allege that PGS was retained to manage DIG's billing pursuant to an October 1, 2009 agreement (Markowitz Decl. at ¶ 9).

[5] The Court declines to consider Porteck Defendants' arguments with respect to Walia and PGS's alleged lack of FDCPA liability (see generally Markowitz Decl. ¶¶ 29-37) in connection with this motion sequence in light of the Court's dismissal of Porteck Defendants' cross motion for summary judgment.

[6] Gelfand and Medina allege that Gelfand has been Vice President of SDINF since 2005 and that he is paid by Diagnostic Imaging Group, Inc. ("DIG"), a healthcare management service that owns one hundred percent of SDINF. (Jacobs' Br. at 6-7.)  Medina was, at all relevant times, Assistant General Counsel for DIG.

establish individual liability. (Jacobs' Br. at 9-10.)
Additionally, Gelfand and Medina aver that any claim against Medina
in connection with the Gelfand Letter sent to Ms. Maloney on or
about June 17, 2013 is time barred as a result of the FDCPA's one-
year statute of limitations. (Jacobs' Br. at 11.) Finally, the
putative defendants argue that the subject Gelfand Letter and the
additional letter annexed to the Second Amended Complaint at
Exhibit "2" do not violate the FDCPA. (Jacobs' Br. at 12-16.)

With respect to the Motion to Add Class Representative,
Gelfand and Medina allege that Plaintiff's request should be denied
as Plaintiff failed to annex any letter received by Ms. Utter, and
Ms. Utter's claims are time barred under both the FDCPA and FCCPA.
(Jacobs' Br. at 18.)

DISCUSSION

I.  <u>Plaintiff's Motion to Amend</u>

    A.  <u>Legal Standard</u>

Rule 15 of the Federal Rules of Civil Procedure provides
that leave to amend a pleading should be freely given by the Court
"when justice so requires." FED. R. CIV. P 15(a)(2). Amendments
are generally favored as they tend to facilitate a determination
on the merits. <u>Blaskiewicz v. Cnty. of Suffolk</u>, 29 F. Supp. 2d
134, 137 (E.D.N.Y. 1998) (citation omitted). However, motions to
amend should be denied where they are founded in "undue delay, bad
faith, futility, or prejudice to the non-moving party . . . ."

Mendez v. U.S. Nonwovens Corp., 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014). The non-movant bears the burden of demonstrating that the proposed amendment would be prejudicial or futile. Blaskiewicz, 29 F. Supp. 2d at 137. The determination of whether leave to amend should be granted is within the Court's discretion. Id.

"'[M]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend.'" Portelos v. City of New York, No. 12-CV-3141, 2015 WL 5475494 (E.D.N.Y. Sept. 15, 2015) (alteration in original) (quoting Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987)). However, a motion to amend filed after discovery has been closed "may constitute an inordinate delay even if certain testimony adduced during discovery purportedly gives the opposing party 'full and fair notice' of a new theory not alleged in the operative complaint." Hutter v. Countrywide Bank, N.A., 41 F.Supp.3d 363, 371 (S.D.N.Y. 2014) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 201-02 (2d Cir. 2007).

One of the fundamental considerations in determining whether to allow an amendment of the pleading is whether such amendment would prejudice defendants. Portelos, 2015 WL 5475494, at *2. To determine whether a non-movant will be prejudiced by the proposed amendment, courts should consider whether the new claim or defense would: "'(i) require the opponent to expend

significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" Id. (quoting Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000)).

A proposed amendment may be denied as futile where it has no merit or fails to demonstrate a cognizable or sufficient claim. Lamothe v. Town of Oyster Bay, No. 08-CV-2078, 2011 WL 4974804, at *9 (E.D.N.Y. 2011). Generally, a motion to amend is reviewed pursuant to the same standard invoked with respect to a Rule 12(b)(6) motion to dismiss. Morritt v. Stryker Corp., 973 F. Supp. 2d 177, 183 (E.D.N.Y. 2013). However, where a motion to amend is filed subsequent to the filing of a motion for summary judgment, "'even if the amended complaint would state a valid claim on its face,' leave to amend may be denied where 'the evidence in support of plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law.'" Id. (quoting Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001)). See also Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 403 (S.D.N.Y. 2014) ("when the motion to amend is filed after the close of discovery and the relevant evidence is before the court, a summary judgment standard will be applied instead.")

Rule 16(b) of the Federal Rules of Civil Procedure provides that a Scheduling Order may only be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In balancing Rule 15(a) against Rule 16, "a finding of 'good cause' depends on the diligence of the moving party." Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (citation omitted).

Although not raised by the parties, Rule 21 is implicated along with Rule 15 because Plaintiff seeks to add additional defendants. See Gesualdi v. Baywood Concrete Corp., No. 11-CV-4080, 2014 WL 4659265, at *3 (E.D.N.Y. Sept. 17, 2014). See also Addison v. Reitman Blacktop, Inc., 283 F.R.D. 74, 78-79 (E.D.N.Y. 2011). Rule 21 of the Federal Rules of Civil Procedure provides, in relevant part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. The same liberal standard afforded to motions to amend pursuant to Rule 15 is applicable to motions to add a new party pursuant to Rule 21. Gesualdi, 2014 WL 4659265, at *3. While the court is afforded broad discretion to allow the addition of a party at any litigation stage, requests are typically denied where they "'come[] so late in the litigation that it will delay the case or prejudice any of the parties to the action.'" Addison, 283 F.R.D. at 79 (citing City of Syracuse v. Onondaga County, 464 F.3d 297, 308 (2d Cir. 2006) (quoting 7 Charles A. Wright, Arthur R. Miller

& Mary Kay Kane, Federal Practice & Procedure, Civil 3d § 1688.1
at 510 (West 2001)0).

   B.   <u>Fair Debt Collection Protection Act</u>

       The FDCPA generally prohibits the use of any "false,
deceptive, or misleading representation or means in connection
with the collection of any debt."  <u>Teng v. Metropolitan Retail
Recovery Inc.</u>, 851 F. Supp. 61, 65 (E.D.N.Y. 1994) (quoting 15
U.S.C. § 1692e).  One single violation of FDCPA Subsection 1692e
will suffice to demonstrate civil liability.  <u>Clomon v. Jackson</u>,
988 F.2d 1314, 1318 (2d Cir. 1993).  This Circuit has adopted an
objective "least sophisticated consumer" standard to determine
whether FDCPA Section 1692e has been violated.  <u>Id.</u> (noting that
"[t]he basic purpose of the least-sophisticated-consumer standard
is to ensure that the FDCPA protects all customers, the gullible
as well as the shrewd").  Although this standard attempts to
protect   naïve   consumers   from   deceptive   practices,   it
"simultaneously shield[s] debt collectors from liability for
bizarre or idiosyncratic interpretations of debt collection
letters."  <u>Greco v. Trauner, Cohen & Thomas, L.L.P.</u>, 412 F.3d 360,
363 (2d Cir. 2005) (internal quotation marks and citations
omitted).  <u>Accord</u> <u>Pujol v. Universal Fidelity Corp.</u>, No. 03-CV-
5524, 2004 WL 1278163, at *3 (E.D.N.Y. 2004).  Whether or not the
wording of the subject letter would deceive the "least
sophisticated consumer" is a question of law.  <u>Shami v. Nat'l</u>

13

Enter. Sys., 914 F. Supp. 2d 353, 359-60 (E.D.N.Y. 2012) (citing Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993)).

The FDCPA is only applicable to "debt collectors," which it defines as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Ohlson v. Cadle Co., Inc., No. 04-CV-3418, 2006 WL 721505, at *3 (E.D.N.Y. Mar. 21, 2006); 15 U.S.C. § 1692a(6).

Officers or employees of a debt collecting agency may be held jointly and severally liable with the agency if they have acted affirmatively. Ohlson, 2006 WL 721505, at *3. See also Krapf v. Prof. Collection Servs., Inc., 525 F. Supp. 2d 324, 327 (E.D.N.Y. 2007) (noting that while this Circuit has not yet ruled on the liability of individuals pursuant to the FDCPA, "[w]here the complaint contains sufficient allegations of personal involvement in the alleged violation, plaintiff states a claim for individual liability for violation of the FDCPA"). Indeed, a "high-ranking employee, executive, or director of a collection agency" may be considered a "debt collector" within the framework of the FDCPA where that defendant had personal involvement in the subject debt collection. Williams v. Professional Collection

<u>Serv., Inc.</u>, No. 04-CV-0286, 2004 WL 5462235, at *4 (E.D.N.Y. Dec. 7, 2004). <u>See</u> <u>Musso v. Seiders</u>, 194 F.R.D. 43, 47 (D. Conn. 1999).

The non-exhaustive list of violative practices set forth in the FDCPA includes: "(3) [t]he false representation or implication that any individual is an attorney or that any communication is from an attorney . . . [and] (10) [t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e.

C.   <u>Analysis</u>

It must be noted that Plaintiff's memorandum in support of her Motion to Amend solely addresses the substitution of Maureen Maloney as class representative and fails to posit any arguments in support of the Second Amended Complaint's addition of four defendants (one of whom was previously terminated by the Court) and two Florida state law claims (one of which was previously withdrawn when Plaintiff filed her Amended Complaint). (<u>See</u> <u>generally</u> Pl.'s Br.) Plaintiff's reply memorandum similarly fails to explain or even address this silence and solely focuses on the opposition raised by proposed defendants Gelfand and Medina. (Pl.'s Reply Br., Docket Entry 81.) Additionally, is disturbing that the Motion to Amend seeking to add new defendants and claims was filed mere days before the final deadline for the completion of all discovery.

All of the parties appear to argue that a summary
judgment standard should be applied to the review of the Motion to
Amend in light of the completion of substantial discovery.
(Markowitz Decl. ¶ 25; Jacobs' Br. at 5; see also Pl.'s Reply at
2 "this Court should consider the facts which were developed during
discovery.")  Although the Porteck Defendants filed a cross motion
for summary judgment, the Court is mindful of the fact that
Plaintiff has not yet had an opportunity to oppose summary judgment
or file its own dispositive motion.  Nevertheless, in light of the
posture of this case, the Court will apply a summary judgment
standard to the extent that it reviews the futility of certain
claims and it will consider the relevant evidence set forth by the
parties.  See Morritt, 973 F. Supp. 2d at 183.

i.  Maureen Maloney

It is well settled that a class representative "must be
part of the class and 'possess the same interest and suffer the
same injury' as the class members."  East Texas Motor Freight
System Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S. Ct. 1891, 1896
(1977) (quoting Schlessinger v. Reservists Comm. To Stop the War,
418 U.S. 208, 216, 94 S. Ct. 2925, 2929, 41 L. Ed. 706 (1974).  It
is worthy of note that the submissions from both the Porteck
Defendants and Gelfand and Medina are virtually silent with respect
to the substitution of Ms. Maloney as plaintiff and class
representative.  (See generally Markowitz Decl.; Jacobs' Br.)  The

Amended Complaint alleges that Ms. Maloney was purportedly indebted to SDINF for medical services rendered and that she received a collection letter dated June 17, 2013 that is identical to the Gelfand Letter received by plaintiff Kayla Zucker. (Second Am. Compl. ¶¶ 42-45, Ex. 1.) In light of the absence of any objection from Defendants as well as the fact that the factual allegations concerning Ms. Maloney are nearly identical to those asserted by plaintiff Kayla Zucker, Plaintiff's request to substitute Ms. Maloney as plaintiff and class representative is GRANTED.

ii. <u>Mark Gelfand and Steven Medina</u>

Plaintiff's request to add Gelfand and Medina as defendants is DENIED based on Plaintiff's lack of diligence and inordinate delay, along with the substantial prejudice that would result from adding these putative defendants to this action. <u>See generally</u> <u>Hutter</u>, 41 F. Supp. 3d at 371; <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184 (2d Cir. 2007) (affirming the district court's denial of leave to amend where plaintiff moved to amend "after an inordinate delay"). <u>See also</u> <u>Portelos</u>, 2015 WL 5475494, at *2 (noting that prejudice to the defendant is one of the fundamental considerations in determining a motion to amend).

The Court is mindful of the fact that Gelfand was initially named as a defendant in this suit and that Plaintiff stipulated to the filing of an Amended Complaint that omitted him

as a defendant. The Amended Complaint was filed on December 19, 2013 and this case has proceeded for nearly two years without Gelfand as a defendant. Indeed, the Court finds it highly troubling that Plaintiff's counsel now seeks to add Gelfand as a defendant when he has been aware, at least generally, of Gelfand's involvement with respect to the subject Gelfand Letter since the commencement of this action.

While Plaintiff points to "new evidence" that was apparently revealed at Gelfand's non-party deposition and in documents produced by PGS and Walia (Pl.'s Reply Br. at 2.), the Court is unpersuaded. Plaintiff alleges that "conducted discovery" has revealed the following: (a) "the actions of the proposed Defendants was limited to drafting and compiling a collection letter under the name of Gelfand" in an effort to deceive consumers into believing that an attorney was now collecting debts; (b) "the proposed defendants were aware that the collection of alleged debts would be abdicated to the Defendant PGS"; and (c) the proposed defendants were not "actively involved" in collecting debts and the telephone number listed in the Gelfand Letter directed calls to a PGS call center in India. (Pl.'s Reply Br. at 3.) It is wholly unclear how these allegations are "new" evidence when the original Complaint alleged that Gelfand drafted the Gelfand Letter to deceive consumers into believing an attorney was collecting debts and the Amended Complaint acknowledges that

SDINF "abdicated" the collection of its debts to PGS. Moreover, no explanation is provided by Plaintiff for the delay between purportedly discovering this "new" evidence and the filing of this motion seven (7) days before the Court's Ordered discovery deadline of September 9, 2014.

In addition, Gelfand would be substantially prejudiced were he to be added as a defendant at this juncture. Gelfand assumedly believed that he would not be a party to this litigation and it would likely require substantial additional resources were he to resume discovery at this late juncture, particularly considering that the Porteck Defendants were not parties to the original action and did not exchange discovery with Gelfand early in this litigation.

Plaintiff has similarly failed to demonstrate the requisite good cause that would warrant the addition of Medina as a defendant at this late stage in the litigation. See FED. R. CIV. P. Rule 16(b); Parker, 204 F.3d at 340 (affirming the denial of plaintiff's motion to amend where he did not demonstrate good cause for his failure to adhere to the Scheduling Order's deadline for amendment of the complaint). In their interrogatory responses dated October 21, 2013, the Original Defendants responded to an interrogatory requesting the name of the individual who composed the Gelfand Letter by stating: "Steven Medina, Assistant General Counsel." (Jacobs' Decl., Docket Entry 78, at Ex. B at 4.) The

absence of diligence on the part of Plaintiff is clearly evidenced by the nearly one year that passed without Plaintiff making any attempt to assert purported claims against Medina.  The Court is not persuaded by Plaintiff's unsupported argument that the delay in attempting to add Medina was occasioned by Plaintiff's lack of knowledge regarding the "full breadth of the concocted Scheme" until after depositions were completed.  (Pl.'s Reply Br. at 6.)  Furthermore, as Medina has not been involved in this litigation to date (nor, as noted by Medina's counsel, was he named as a defendant in Ms. Maloney's Florida state action) significant prejudice would inure to Medina should he be forced to begin conducting discovery at this advanced stage of the case.

The Court will not reach the issue of the alleged futility of Plaintiff's proposed claims against Gelfand and Medina in light of the inordinate delay, prejudice, and current procedural posture.

### iii. Melodie Kraljev

The Motion to Amend fails to proffer any support for the addition of Kraljev as a defendant in this action and Plaintiff's Reply Memorandum fails to even mention Kraljev's name.  (See, Pl.'s Br.; Pl.'s Reply Br.)  The Second Amended Complaint's references to Kraljev are limited to two paragraphs:

> 23.   The Defendant Melodie Kraljev is a natural person residing in Queens County, New York.  The Defendant Kraljev is employed as

the Operations Manager of PC and, in
conjunction therewith, personally controls
the policies and practices invoked by the
Defendant PC which led to the violations of
the FDCPA, the FCCPA and the FDUTPA as set
forth in the herein Second Amended Complaint.
In conjunction therewith the Defendant Kraljev
personally condoned, with knowledge, and
participated in the wrongful sending of the
subject debt collection letters as explained
more fully below.

32.    After the [Gelfand] letter was
designed by the Defendant Medina it was
circulated to a group of persons including
Defendants Gelfand, Walia and Kraljev.    With
knowledge that the letter was designed to
falsely convey the impression that it was sent
directly by a duly admitted attorney at law
each Defendant participated in the wrongful
creation of said letter and the sending
thereof.

(Am. Compl. ¶¶ 22, 32.)  While, as previously noted, this District

has extended FDCPA liability to individual employees of a debt

collector, the complaint must contain "sufficient allegations of

personal involvement."  See Krapf, 525 F. Supp. 2d at 327-28.  The

Second Amended Complaint's allegations against Kraljev are limited

to general assertions that she personally controlled PC's policies

and knowingly participated in the sending of the Gelfand Letter.

These non-specific allegations do not suffice to establish the

personal involvement necessary to sustain an FDCPA claim against

an individual employee.  See, e.g., Williams, 2004 WL 5462235, at

*4 (granting branch of motion to amend seeking to add two

individual owners of defendant corporation to the complaint where

the owners allegedly "left a series of abusive and deceptive phone messages on the plaintiff's answering machine in an attempt to collect a debt.").

Furthermore, Plaintiff's submissions do not even attempt to establish the requisite good cause for adding Kraljev as a defendant after discovery has been closed. See FED. R. CIV. P. Rule 16(b). Like Gelfand and Medina, Kraljev would be severely prejudiced were she forced to begin litigating this action at this advanced stage. Accordingly, the Motion to Amend is DENIED as to the addition of Melodie Kraljev as a defendant.

iv. <u>Porteck and Walia</u>

Plaintiff, without explanation, apparently seeks to add PC as a defendant and terminate PGS from this case. The Second Amended Complaint alleges that the Gelfand Letter was sent by PC and that PC "communicated with the Plaintiff under the guise of Defendant Gelfand by using the stationary of the Defendant Gelfand which only the Defendant Gelfand was authorized to prepare." (Second Am. Compl. ¶¶ 30, 34, 40.) However, Plaintiff's reply memorandum states that "the proposed [Second Amended Complaint] alleges that the letters were sent by PGS [Porteck Global Services] . . ." and contains no references to PC sending the Gelfand Letter. (Pl.'s Reply Br. at 4.) In addition to the confusion in Plaintiff's submissions, the Porteck Defendants allege that "there is no triable issue of fact that [the] Gelfand Letter was

electronically generated by Medical Manager and mailed by DIG to Doshi's patients," and cited to the transcript of the deposition of Melodie Kraljev.  (Markowitz Decl. ¶ 45.)  There is a clear material issue of fact as to what entity physically mailed the Gelfand Letter.  See Morritt, 973 F. Supp. 2d at 183; Summit Health, Inc., 993 F. Supp. 2d at 403 (applying a summary judgment standard where the motion to amend is filed subsequent to the close of discovery and relevant evidence has been submitted to the court).

It appears to be undisputed that PC is solely owned by Walia and that PGS is owned in part by Walia (see Markowitz Decl. at ¶ 29), although the specific corporate relationship (if any) between PC and PGS has not been explained by the parties.  The prejudice to the only remaining defendant, Walia, in essentially substituting PC for PGS is insignificant considering his ownership of and involvement with both companies; his involvement in discovery throughout this action; and the minimal anticipated resources it will take to complete any additional discovery with respect to PC.

Walia was named as a defendant in the Amended Complaint and the Second Amended Complaint provides minor elaborations regarding Walia's alleged role in the subject deceptive scheme. Particularly, the Second Amended Complaint alleges that the Gelfand Letter was circulated to Walia; that Walia (along with the

proposed co-defendants) "concocted a scheme" to circumvent the FDCPA, FCCPA and the FDUTPA; and that Walia "personally condoned, with knowledge, and participated in the wrongful sending of the subject debt collection letters. . . ." (Second Am. Compl. ¶¶ 21, 26, 31.) These proposed amendments closely echo the allegations set forth in the Amended Complaint and would not result in any prejudice to Walia. See Portelos, 2015 WL 5475494, at *2 (mere delay is not a basis for the denial of the right to amend in the absence of a demonstration of undue prejudice or bad faith).

Although the Court is troubled by the delay in adding PC as a defendant as well as Plaintiff's failure to appropriately support the addition of PC in her Motion, based on the lack of substantial prejudice and liberal standard of Rule 15, the Motion to Amend is GRANTED with respect to the addition of PC as a defendant and the additional allegations against Walia.

D. Florida State Law Claims

The Second Amended Complaint also seeks to assert claims pursuant to the Florida Consumer Collection Practices Act (FCCPA) and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) against all defendants. (See generally Second Am. Compl.) While Plaintiff's initial Complaint contained a claim pursuant to FCCPA, Plaintiff's Amended Complaint omitted that claim, presumably due to Plaintiff Kayla Zucker's New York residency and the termination

24

of the only Florida defendant.  Plaintiff has proceeded, to date, solely under the FDCPA.

Now, with the substitution of Ms. Maloney, a Florida resident, the Second Amended Complaint seeks to resurrect the FCCPA claim and add an FDUTPA claim.  Plaintiff's submissions in connection with this motion sequence are bereft of any reference to her proposed Florida state law claims.  While the Court acknowledges the similarity between the FCCPA, FDUTPA, and FDCPA, it is likely that the addition of two new claims pursuant to different state statutes would require additional resources and discovery in this matter.  Moreover, prejudice will inure to the remaining defendants, who proceeded during this litigation and through the close of discovery solely in the defense of only one claim pursuant to the FDCPA. See Portelos, 2015 WL 5475494, at *2 (one of the court's considerations in determining whether the proposed amendment will create prejudice is whether the new claim would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial . . . .") (internal quotation marks and citations omitted.).

Accordingly, the Motion to Amend is DENIED with respect to the addition of a second cause of action under the FCCPA and a third cause of action under the FDUTPA.  The Court need not reach the issue of the purported futility of these claims.

## II. Motion to Add Additional Class Representative

Plaintiff's Motion to Add an Additional Class Representative is essentially a motion to amend the Amended Complaint to add Ms. Utter as a co-plaintiff and additional class representative. (See generally Pl.'s Class Rep. Br. at 5). However, Plaintiff has failed to demonstrate the good cause required to overcome her inordinate delay in interposing such request, particularly in light of the controlling Scheduling Order setting September 9, 2014 as the end date for discovery. See generally FED. R. CIV. P. Rule 16(b). See also Addison, 283 F.R.D. at 79 (noting that requests to add parties are generally denied when they are made sufficiently late in the litigation to create delay or prejudice to the parties). Plaintiff has been aware of Ms. Utter's receipt of the Gelfand Letter for some time as her name appeared on a list of recipients of the Gelfand Letter that the Original Defendants provided during discovery. (Pl.'s Class. Rep. Br. at 5). Moreover, Plaintiff's Motion to Add an Additional Class Representative failed to annex the letter purportedly received by Ms. Utter.

Based on the inordinate delay and the deficiencies in the moving papers, Plaintiff's Motion to Add an Additional Class Representative is DENIED. The Court need not reach the statute of limitations issue raised by Gelfand and Medina in light of its denial of this motion in toto.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's MOTION TO AMEND is GRANTED IN PART and DENIED IN PART and Plaintiff's MOTION TO ADD AN ADDITIONAL CLASS REPRESENTATIVE is DENIED. Plaintiff is directed to file a Second Amended Complaint that conforms to the directives of this Memorandum and Order within fourteen (14) days of the date of this Memorandum and Order.

Defendants are GRANTED leave to file their motion for summary judgment upon the filing of the Second Amended Complaint or the expiration of the time period set forth above.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    October __23__, 2015
          Central Islip, New York